## In the Matter of the Estate of LOUIS JAFFE, Also Known as LOUIS JOFFE, Deceased.

Surrogate's Court, Kings County, December 9, 1937.

*Emanuel Brooks*, substitute attorney for Diana Jaffee, as executrix, etc., petitioner.

*Charles H. McCarty*, special guardian.

*Robinson & Lewis*, former attorneys for the executrix on probate.

WINGATE, S. Section 64 of the Surrogate's Court Act mandatorily prescribes the appointment of a special guardian for every party to a proceeding in this court who is not *sui juris* and not otherwise represented. In the absence of such appointment the infant or incompetent in question is deemed not before the court, and any decree made is void as to him. (*Matter of Weed*, 107 Misc. 595, 598.)

In the vast majority of cases this requirement is beneficent to a marked degree. Occasionally, however, in non-controversial cases, it assumes a semblance of hardship by imposing apparently needless additional expense on estates which can ill afford it. In consequence of these somewhat exceptional cases it has been the policy of this court to encourage amicable arrangements fixing the quantum of the remuneration to be paid for the service between the representatives of affected estates and special guardians, and to validate them, in so far as they do not appear grossly unjust to one or the other of the interested parties, despite the fact that in a given instance such compensation might have been fixed in a different sum if the matter had been submitted for decision in this regard. The chief purpose of this policy has been to minimize the possibility of criticism of, and discontent with, a usually salutary enactment.

By reason of the underlying motive for the establishment of the practice, it is obvious that such approval by the court of a stipulated compensation is predicated on an understanding and belief that the amount of the compensation thus fixed has been made the subject of mutual agreement by both interested parties. Usually such assent is evidenced on behalf of the estate by its duly retained attorney at law. Since, however, the consent, with its presumable consequent validation, involves a concrete depletion of the assets of the estate of a nature for which an attorney possesses no authority by virtue of his office alone (*Lewis* v. *Duane*, 141 N. Y. 302, 313; *Appleton* v. *Greenfield*, 244 App. Div. 732; *Nutting* v. *Kings County El. R. Co.*, 91 Hun, 251, 256; *People* v. *Mayor of New York*, 11 Abb. Pr. 66, 72; *Matter of Strandburg*, 138 Misc. 732, 737; *Matter of Hill*, 157 id. 487, 488), the court naturally assumes that the assent by the attorney is pursuant to an express authorization to that effect by his client, and, in this respect, the usual rule is deemed to prevail that the agent, in his relations with third parties, guarantees the scope of his agency. (*Taylor* v. *Nostrand*, 134 N. Y.

108, 109; *Baltzen* v. *Nicolay*, 53 id. 467, 469; *Moore* v. *Maddock*, 251 id. 420, 425.)

Little or no difficulty has arisen from the adoption of this practice in respect to special guardians appointed on the motion of the court itself. This, however, has unfortunately not been the uniform experience with those whose appointment has been suggested by infants over fourteen years pursuant to the statutory authority accorded in this regard. (Surr. Ct. Act, § 64.) Whereas, the purpose of permitting such an infant to nominate his own special guardian is primarily to allow his representation by some person whose acquaintance and association with him has inspired his confidence, the statutory permission has too frequently been misused to the end of enabling the attorney for the estate to confer a benefit upon some favored friend or associate with whom the infant was wholly unacquainted. In such situations, the estate attorney possesses a conflicting interest in respect to the compensation to be awarded the special guardian of his actual, although nominally of the infant's, selection, and is under obligation to completely assure himself that any stipulated remuneration meets with the wholehearted and completely informed approval of the clients from whom he holds his retainer.

According to the demonstration of the record, the foregoing observations are apposite to the case at bar. The attorneys for the proponent in a simple and non-controversial probate proceeding suggested that a certain member of the bar, wholly unknown to the infant or her family, be nominated as special guardian for one of the infant children of the testator who was over fourteen years of age. This was done. The proponent asserts statements by these attorneys to the effect that the compensation of such special guardian would not exceed seventy-five dollars. Whereas these assurances, as stated, are denied, the attorneys admit " that in the course of conversation he stated that the average fee of a special guardian in an estate of this size and in an ordinary proceeding would be about $75.00." The decree, as submitted by the attorneys, for signature by the court, contained a provision that the special guardian should receive the sum of $150 " as and for his costs and allowances." In the margin thereof, opposite this provision, was written in pen: " Fee to Special Guardian of $150.00 consented to by attorney for petitioner." This is signed by the attorney.

The court signed the decree as submitted on the faith of this representation of assent by the attorney for the petitioner. As hereinbefore noted, such representation necessarily included the further representation that the attorney had been expressly author-

ized by his client to grant this consent. As a matter of fact, no such authority had been accorded. The representation was, therefore, untrue in fact and amounted to a constructive fraud on the court by reason of which the decree must be vacated at the instance of any person injuriously affected thereby. (Surr. Ct. Act, § 20, subd. 6; *Matter of Grube*, 160 Misc. 718, 721.)

As a result of the opening of the decree, the probate proceeding is still pending and undetermined, wherefore the motion of the petitioner for a substitution of attorneys is timely.

The attorneys object to such substitution until they are paid the sum of $200.45. It is their position that it was agreed between them and the executrix that they should receive $250 and disbursements for their work in connection with the probate of the will and the settlement of the estate, that their disbursements have totaled $25.45 and that they have been paid only $75.

Their position contains two legal fallacies. They have been discharged, wherefore, even if a valid agreement for a specified compensation had originally been made, such agreement would now be wholly terminated and their present rights to remuneration would be only on a basis of *quantum meruit*. (*Matter of Montgomery*, 272 N. Y. 323, 326; *Matter of Tillman*, 259 id. 133, 135; *Matter of Pagnotta*, 161 Misc. 415, 418.) Further, however, it is primary that a fiduciary, whether executor or administrator, possesses no authority to bind an estate or its assets by express contract in any event. (*Matter of Meng*, 227 N. Y. 264, 269; *Matter of Gilman*, 251 id. 265, 271; *Matter of Hoffman*, 136 App. Div. 516, 519; *Matter of Woolfson*, 158 Misc. 928, 930; *Matter of Marinano*, 158 id. 825, 827, 828.) No valid contract for remuneration, therefore, ever existed with the estate or its legal representative as such, and the only remedy of the displaced attorneys as against the estate is to have the reasonable value of their services determined in a proceeding instituted for that purpose.

It follows that the motion for substitution will be granted and the retaining lien of the discharged attorneys will be transferred from the papers in their hands to the assets of the estate as a whole, and they will be directed to surrender all papers and property in their possession to their successors.

Returning now to the question of the fixation of the proper remuneration of the special guardian on the probate, it is important to note that the total assets of the estate aggregate only approximately $3,000. The will was a natural one and its probate wholly uncontested. The only complication presented, if it may be dignified by such a term, arose by reason of an interlineation in the will which required a *pro forma* hearing, conducted by a law

assistant of the court, to determine whether such interlineation was made prior or subsequent to probate.  In an estate of such insignificant size and requiring this minimum of specialized effort, the court deems an allowance of twenty-five dollars ample remuneration to the special guardian and it is fixed in this sum.

Enter decree and order on notice in conformity herewith.